## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**FRANCES Y. CARR,**

      **Plaintiff,**

**vs.**                        **Case No.  1:16cv278-WTH/CAS**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social**
**Security,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB).  After careful consideration of the entire record, it is respectfully recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On May 7, 2013, Plaintiff, Frances Y. Carr, filed an application for DIB benefits alleging disability beginning March 31, 2013, based on carpel tunnel, depression, tendonitis, dyslexia, pinched nerve in her shoulder, tumor in her thumbs, and osteoarthritis.  Tr. 20, 186, 190.  (Citations to the record transcript/administrative record, ECF No. 11, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.)  Plaintiff's date last insured for DIB was December 31, 2017.  Tr. 20.

Plaintiff's application was denied initially on July 19, 2013, and upon reconsideration on September 18, 2013.  Tr. 20.  On October 23, 2013, Plaintiff requested hearing.  Tr. 20.  On May 20, 2015, Administrative Law Judge (ALJ), William H. Greer, held a video hearing in Jacksonville, Florida, with Plaintiff and counsel appearing in Gainesville, Florida.  Tr. 20.  Plaintiff was represented by Elizabeth F. Stakenborg, an attorney, and Archie Blair, an attorney, who appeared at the hearing on behalf of Plaintiff.  Tr. 20, 45-46.  Plaintiff testified.  Tr. 47-71, 74, 76.  Charles K. Heartsill, an impartial vocational expert, testified.  Tr. 20, 72-78, 280-84 (Resume).

During the hearing, the ALJ advised Plaintiff's counsel that there was a diagnosis in the record that is consistent with fibromyalgia, but that he did

not see any evidence that would support that diagnosis, referring in part, to

Social Security Ruling 12-2P.[1]  Tr. 71.  Counsel responded:

> And you're right, your honor.  That is something I looked at before I
> came in here.  You know, we did receive the records from the Acorn
> clinic.  She is limited as far as what her medical care is and, you,
> know, that was just a simple diagnosis, they haven't really done
> anything, they don't talk about the trigger points and all of that as far
> as the records are concerned.

*Id.*  The ALJ referred to Exhibit 10F, Tr. 392, and Dr. Johnson [W. Bruce

Yancey, M.D.] who Plaintiff said was a rheumatologist.  Tr. 71.  The ALJ

thought a CV would be helpful.  *Id.*  The ALJ also suggested to counsel that

he send Dr. Johnson [sic] a copy of SSR 12-2p and ask if there are findings

in his records that would meet SSR 12-2p and the ALJ stated:  "And, of

course, I don't want just a yes.  I want him to say does this, this and this."

*Id.* Counsel agreed.  *Id.*  The ALJ left the record open for 30 days.  *Id.*  On

June 8, 2015, a four page Curriculum Vitae for W. Bruce Yancey, Jr., M.D.,

Plaintiff's treating rheumatologist, was sent to the ALJ.  Tr. 36, 469-72

(Exhibit 16F).  No additional records were sent to the ALJ.  Tr. 36.

On August 13, 2015, the ALJ issued a decision denying Plaintiff's

application for benefits.  Tr. 20-32.  On September 28, 2015, Plaintiff filed a

---

[1]  The ALJ is referring to Social Security Ruling (SSR) 12-2p, 2012 SSR LEXIS 1
(eff. July 25, 2012).  Although social security rulings do not carry the "force and effect of
the law or regulations," *see* Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984), "[t]hey
are binding on all components of the Social Security Administration."  20 C.F.R.
§ 402.35(b)(1).  The ALJ referred to SSR 12-2p in his decision.  Tr. 24.

request for review and a memorandum.  Tr. 15-16, 295-99.  On October 8,

2015, the Appeals Council granted Plaintiff an extension of time and

authorized Plaintiff to submit any new and material evidence.  Tr. 8-9.

Thereafter, additional documents were sent to the Appeals Council,

including educational records dated August 18, 1971, to March 31, 2004

(11 pages), Tr. 285-92 (Exhibit 17E); statement of claimant dated

September 16, 2015 (three pages), Tr. 293-94 (Exhibit 18E); and the

representative's brief dated September 21, 2015 (five pages), Tr. 295-99

(Exhibit 19E).

On June 16, 2016, the Appeals Council noted that it had considered

the additional evidence mentioned above, Tr. 285-99 (Exhibits 17E-19E).

Tr. 2, 5-6.  The Appeals Council also considered 20 pages of records from

Acorn Clinic dated September 21, 2015, to March 21, 2016, Tr. 473-90,

which post-dated the ALJ's decision.  The Appeals Council considered

these documents, Tr. 473-90, as new information about a later time and, as

a result, stated that they did not affect the ALJ's disability decision.  Tr. 2.

The Appeals Council's order makes the ALJ's decision the final decision of

the Commissioner.  Tr. 1-7; *see* 20 C.F.R. § 404.981.

On August 12, 2016, Plaintiff filed a Complaint with the United States

District Court seeking review of the ALJ's decision.  ECF No. 1.  The

parties filed memoranda of law, ECF Nos. 20 and 21, which have been

considered.

## II. Findings of the ALJ

The ALJ made several findings:

1. "The claimant meets the insured status requirements of the Social Security Act through December 31, 2017." Tr. 22.

2. "The claimant has not engaged in substantial gainful activity since March 31, 2013, the alleged onset date." *Id.*

3. "The claimant has the following severe impairments: obesity; osteoarthritis of the hand and wrist; history of recurrent right dorsal carpal ganglion cyst; and a history of osteotomy of the 2nd ray of the right foot." *Id.* The ALJ determined that Plaintiff's chronic obstructive pulmonary disease (COPD) was a medically determinable impairment, but "objectively mild and controlled by medication so that it causes no more than a minimal limitation on the ability of the claimant to perform work activities" and, therefore, was non-severe. Tr. 22-23. The ALJ also determined that Plaintiff's medically determinable mental impairments of depressive disorder, NOS; anxiety disorder, NOS; and specific phobia, "situational type do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." Tr. 23. The ALJ determined that Plaintiff had *mild* limitation in the functional areas of activities of daily living, social functioning and concentration, persistence, or pace, and *no* episodes of decompensation which have been of extended duration. Tr. 23-24. The ALJ also noted that Plaintiff "has been assessed with fibromyalgia; however, the undersigned has not found this to be a medically determinable impairment. Here, the Agency cannot rely upon the physician's diagnosis alone (SSR-12-2p)." Tr. 24; *see supra* at n.1.

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 24.

5. "[T]he claimant has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) except no crawling, no crouching, no ladders, ropes, and scaffolds.  Frequent use of the hands for handling and fingering and feeling.  Occasional forceful gripping with the hands."  Tr. 25.

6. "The claimant is capable of performing past relevant work as a Hair Stylist; Dictionary of Occupational Titles, # 332.271-018, Light (SVP-6).  This work does not require the performance of work-related activities precluded by the claimant's [RFC]."  Tr. 32.

7. "The claimant has not under a disability, as defined in the Social Security Act, from March 31, 2013, through the date of this decision." Tr. 32.

## III.  Legal Standards

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial

evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)
(citations omitted).

A disability is defined as a physical or mental impairment of such
severity that the claimant is not only unable to do past relevant work, "but
cannot, considering his age, education, and work experience, engage in
any other kind of substantial gainful work which exists in the national
economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage
in any substantial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous period of not
less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509
(duration requirement). Both the "impairment" and the "inability" must be
expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212
(2002). In addition, an individual is entitled to DIB if she is under a
disability prior to the expiration of her insured status. *See* 42 U.S.C.
§ 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of
Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz
Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps. 20 C.F.R.
§ 404.1520(a)(4)(i)-(v):

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.  Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[2]

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If

---

[2] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. *See* 20 C.F.R. § 404.1512(a); Moore v. Barnhart, 405 F.3d at 1211.  The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ.  *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007) (unpublished).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to

the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

This is so because treating physicians "are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of your

medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone

or from reports of individual examinations, such as consultative

examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).  "This

requires a relationship of both duration and frequency."  Doyal v. Barnhart,

331 F.3d 758, 762 (10th Cir. 2003).

   The reasons for giving little weight to the opinion of the treating

physician must be supported by substantial evidence, Marbury v. Sullivan,

957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated.

Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is

given to a treating physician's opinion and any reason for giving it no

weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at

1053.

   The ALJ may discount the treating physician's opinion if good cause

exists to do so.  Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986).

Good cause may be found when the opinion is "not bolstered by the

evidence," the evidence "supported a contrary finding," the opinion is

"conclusory or inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory." Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

Opinions on some issues, such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); *see* Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986). "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, 1996 SSR LEXIS 2, at *6 (1996). Although

physician's opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has responsibility of assessing the claimant's RFC.  *See supra* at 8 n.2.

A treating physician's opinions that a claimant is unable to work and necessarily disabled would not be entitled to any special weight or deference, however.  The regulations expressly exclude such a disability opinion from the definition of a medical opinion because it is an issue reserved to the Commissioner and a medical source is not given "any special significance" with respect to issues reserved to the Commissioner, such as disability.  20 C.F.R. § 404.1527(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6.  In Lewis v Callahan, the court noted "that we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinion of the legal consequences of his condition.  Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings."  125 F.3d at 1440.

Notwithstanding, generally, more weight is given to the opinion of a specialist "about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R.

§ 404.1527(c)(2), (5); *see* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 594 n.4 (9th

Cir. 2004) (noting that "[s]pecialized knowledge may be particularly

important with respect to a disease such as fibromyalgia that is poorly

understood within much of the medical community," thus rheumatologists'

opinions were entitled to greater weight than those of other physicians)

(<u>Benecke</u> quoted in <u>Somogy v. Comm'r of Soc. Sec.</u>, 366 F. App'x 56, 65

n.13 (11th Cir. 2010) (unpublished)).  Although a claimant may provide a

statement containing a treating physician's opinion of her remaining

capabilities, the ALJ must evaluate such a statement in light of the other

evidence presented and the ALJ must make the ultimate determination of

disability.  20 C.F.R. §§ 404.1512, 404.1513, 404.1527, 404.1545.

## IV.  Legal Analysis

**Substantial evidence supports the decision rendered by the ALJ and he correctly applied the law.**

Plaintiff argues that the ALJ erred in not properly crediting the opinion

of treating physician, Dr. Yancey, a rheumatologist, and the statement of

Sandra Topp, A.R.N.P., a treating nurse, when he determined Plaintiff's

ability to perform past relevant work.  ECF No. 20 at 23-29.

Dr. Yancey diagnosed Plaintiff with fibromyalgia and completed a

Functional Capacity Evaluation on December 16, 2013, which the ALJ

referred to during the hearing, Tr. 71, *see supra* at 2-3.  Tr. 392 (Exhibit

10F).  Nurse Topp also completed a Functional Capacity Evaluation on

December 12, 2013.  Tr. 391.  Dr. Yancey is a medical source, whereas

Nurse Topp is not.  Their opinion and statement regarding Plaintiff's

fibromyalgia diagnosis are discussed below.

I.

The American College of Rheumatology has stated that fibromyalgia

is both real and difficult to confirm.  *See generally* Frederick Wolfe, *et al.*,

The American College of Rheumatology Preliminary Diagnostic Criteria for

Fibromyalgia and Measurement of Symptom Severity, 62 Arthritis Care &

Research 600 (May 2010).  An extensive body of case law pre-dates the

effective date of SSR 12-2p relating to courts' treatment of social security

disability claims based on fibromyalgia.  See Johnson v. Colvin, No.

1:14cv149-WS/CAS, 2015 U.S. Dist. LEXIS 55388, at *31-38 (N.D. Fla.

Mar. 25, 2015), *adopted*, 2015 U.S. Dist. LEXIS 55381 (N.D. Fla. Apr. 27,

2015), for a discussion of the legal standards in fibromyalgia cases pre-

dating SSR 12-2p and a discussion of SSR 12-2p.  The following is a brief

explanation of SSR 12-2p derived from Johnson.

The Social Security administration issued SSR 12-2p to assist

factfinders in the evaluation of fibromyalgia.  SSR 12-2p, 2012 SSR LEXIS

1 at *1.  Social Security Ruling 12-2p "provides that once a claimant is

determined to have fibromyalgia her statements about symptoms and functional limitations are to be evaluated according to the two-step process set forth in SSR 96-7p, 1996 SSR LEXIS 4." Tully v. Colvin, 943 F. Supp. 2d 1157, 1165 (E.D. Wash. 2013); *see* SSR 12-2p, 2012 SSR LEXIS 1 at *13. "These policies provide that '[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all other evidence in the case record.'" *Id.* (quoting SSR 12-2P, 2012 SSR LEXIS 1); *see* Evaluation of Fibromyalgia, 77 Fed. Reg. 43,640 (July 25, 2012).

Social Security Ruling 12-2p provides that the Social Security Administration "will find that a person has an MDI [medically determinable impairment] of FM [fibromyalgia] if the physician diagnosed FM and provides the evidence we describe in section II.A. *or* section II.B., *and* the physician's diagnosis is not inconsistent with the other evidence in the person's case record." SSR 12-2p, 2012 SSR LEXIS 1 at *4-5 (emphasis added). Sections II.A. and II.B. include *two sets of criteria for diagnosing fibromyalgia*--the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia *or* the 2010 ACR Preliminary Diagnostic Criteria. *Id.* The ALJ referred to these criteria in his decision. Tr. 24.

The first set of criteria (1990) requires that the claimant demonstrate:
(1) a history of widespread pain; (2) at least 11 positive tender points[3] on
physical examination and the positive tender points must be found
bilaterally, on the left and right sides of the body and both above and below
the waist; *and* (3) evidence that other disorders, which could cause the
symptoms or signs were excluded.  SSR 12-2p, 2012 SSR LEXIS 1 at *5-7
(§ II.A.1.-3. criteria).

The second set of criteria (2010) requires that the claimant
demonstrate: (1) a history of widespread pain; (2) repeated manifestations
of six or more fibromyalgia symptoms, signs, or co-occurring conditions[4];

---

[3]  The criteria in section II.B. of SSR 12-2p may be used "to determine an MDI of
FM if the case record does not include a report of the results of tender-point testing, or
the report does not describe the number and location on the body of the positive tender
points."  2012 SSR LEXIS 1 at *6 n.6 (§ II.A.2.b.).  In other words, tender-point testing
under section II.A.2. may not be the exclusive manner to determine an MDI of FM.

[4]  Symptoms and signs that may be considered include the "(s)omatic symptoms"
referred to in Table No. 4, "Fibromyalgia diagnostic criteria," in the 2010 ACR
Preliminary Diagnostic Criteria.  We consider some of the "somatic symptoms"
listed in Table No. 4 to be "signs" under 20 C.F.R. 404.1528(b) and 416.928(b).
These "somatic symptoms" include muscle pain, irritable bowel syndrome,
fatigue or tiredness, thinking or remembering problems, muscle weakness,
headache, pain or cramps in the abdomen, numbness or tingling, dizziness,
insomnia, depression, constipation, pain in the upper abdomen, nausea,
nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching,
wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting,
heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes,
shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties,
easy bruising, hair loss, frequent urination, or bladder spasms.

2012 SSR LEXIS 1 at *8 n.9.

*and* (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions[5] were excluded.  SSR 12-2p, 2012 SSR LEXIS 1 at *7-9.  *See* Lillard v. Comm'r, Soc. Sec., Civil Case No. JKB-13-1458, 2014 U.S. Dist. LEXIS 66720, at *6 n.1 (D. Md. May 14, 2014).

Social Security Ruling 12-2p provides guidance regarding the documentation needed, other sources of evidence, and what can be done if the evidence is insufficient.  Guidance is also provided regarding how FM is considered in the five-step sequential evaluation process.  SSR 12-2p, 2012 SSR LEXIS 1 at *9-19.

## II.

As noted herein, SSR 12-2p discusses what a claimant must show to establish that her fibromyalgia is a medically determinable impairment. A review of the ALJ's decision shows that he engaged in this analysis by weighing and discussing opinions from Plaintiff's acceptable medical sources, considering Plaintiff's longitudinal records, including patient records from Nurse Topp, and assessing Plaintiff's credibility.  Tr. 24-31.

---

[5]  *See* SSR 12-2p, 2012 SSR LEXIS 1 at *9 n.10 for a list of these conditions.

When determining whether Plaintiff has "severe impairments," the

ALJ considered that Plaintiff was assessed with fibromyalgia, but did not

find "this to be a medically determinable impairment" and stated:

> Finally, the claimant has been assessed with fibromyalgia; however, the undersigned has not found this to be a medically determinable impairment.  Here, the Agency cannot rely upon the physician's diagnosis alone (SSR-12-2p).  The evidence must document that the physician reviewed the person's medical history and conducted a physical examination.  The Agency reviews the physician's treatment notes to see if they are consistent with the diagnosis of fibromyalgia, determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities.
>
> Based on the 1990 ACR Criteria for the Classification of Fibromyalgia and the 2010 ACR Preliminary Diagnostic Criteria, the Agency may find that a person has the medically determinable impairment of fibromyalgia if he or she meets three elements.  Here, the medical evidence of record does not show any assessment for positive tender points bilaterally.  Moreover, there is no evidence that other disorders that could cause the symptoms or signs were excluded by the claimant's treating source.  Further, the consultative examination did not show any evidence of the disease (Exhibits 6F, 8F, 11F, and 15F).

Tr. 24.

As part of his RFC analysis, the ALJ considered Plaintiff's pre-

hearing and post-hearing statements and Plaintiff's husband's Third Party

Function Report when assessing Plaintiff's credibility in light of the

medical evidence.  Tr. 25-26, 30-31.

The ALJ then considered the medical evidence, beginning with Plaintiff's treatment in 2011 at ACORN Medical Clinic where she was primarily treated by Nurse Topp.[6]  Tr. 26.

> The claimant's record also contains primary care treatment records from ACORN Medical Clinic dating back to 2011 where the claimant was primarily treated by Sandra Topp, ARNP [footnote omitted; *see supra* at n.6] (Exhibit 6F).   In September 2011, the claimant exhibited severe emotional liability associated with "the very complicated treatment of her husband's metastatic cancer" (Exhibit 6F, page 20).   About a year later, the claimant's records reflect that she was under a 'tremendous amount of stress' due to her son's addiction to pain killers, which was causing increased mental health symptoms of anxiety and depression.  The claimant reported, however, that her medication made her feel much better under normal circumstances and caused no adverse side effects (Exhibit 6F, page 15).

> In January 2013, approximately three months before her alleged onset of disability, the claimant attended a routine follow-up appointment with Ms. Topp, complaining primarily of worsening foot pain of two months duration.  Objectively, the claimant exhibited tenderness to palpation in the web space between the second and third metatarsals on the right.  The claimant was positive for a large callus on the plantar surface of the foot.  The third toe was noted to be bending laterally at the MTP joint (Exhibit 6F, page 11).  An X-ray of the right foot was later performed, which showed no abnormalities (Exhibit 3F, page 3).  Podiatry records reflect that she underwent osteotomy of the 2nd ray of the right foot in April 2013 for capsulitis right with hammer toe and medial

---

[6]  The ALJ stated: "Ms. Topp was erroneously described by the claimant's attorney as a medical doctor in an On the Record Request filed on April 7, 2014.  Thus, Ms. Topp is not an acceptable medial [sic] source and any assessments or diagnoses offered by her cannot be relied upon to form the basis of a medically determinable impairment and have not been considered herein (Exhibit 7B).  Tr. 26 n.1. Nevertheless, the ALJ considered Nurse Topp's patient notes and comments throughout his decision.  Tr. 26-30.

displacement.  The procedure was completed without complication or recurrence impairment (Exhibit 4F).

The claimant returned to treatment with Ms. Topp until April 2013, just prior to her surgery (Exhibit 6F, page 9).   In a review of symptoms, the claimant denied parasthesias, weakness, dizziness, and confusion.   The claimant denied depressed mood or anxiety.  Objectively, the claimant's musculoskeletal system was noted to be normal.  She exhibited good range of motion in her back with no palpable spasms.  The claimant was cleared for surgery (Exhibit 6F, page 10).

In July 2013, approximately two months after the claimant filed this present application for disability benefits, the claimant returned to Ms. Topp complaining of persistent left sided pain since April.  The claimant reported that she experienced pain with lifting her left arm and taking a deep breath.  The claimant also reported that she had a lump on her right wrist.  Though no orthopedic records confirm any such appointment, the claimant reported that she had seen her orthopedist who told her it did not appear to be ganglion cyst and might be a tumor.  The claimant reported that if it was a ganglion cyst, she did not want any treatment because it did not cause her any discomfort.  The claimant also alleged worsening bilateral carpal tunnel symptoms, stating that she wore braces daily and avoided activities that aggravated her symptoms.  The claimant reported that she wished to be started on a medication that had helped her in the past (Exhibit 6F, page 1).   Objectively, the claimant was noted to be in no apparent distress.  The claimant was positive for a non-tender lump at the wrist approximately .5 centimeters in size on the posterior aspect of the right wrist.  The claimant was prescribed Neurontin medication and advised to quit smoking (Exhibit 6F, page 2).

On September 4, 2013, the claimant underwent a psychological consultative examination with Dr. Diana Benton at the request of this Agency (Exhibit 7F).   The claimant described having worry about "a number of situations" and excessive anxiety when pain was high or she had not gotten a lot of sleep.  The claimant reported diminished interest in activities as well as poor appetite

secondary to pain.  The claimant reported feeling worthless secondary to diminished abilities and variable energy.  The claimant did reveal, however, that she had just spent the weekend at the beach and she had "to do a lot of stairs" so she claimed she was hurting more than normal.  The claimant was assessed with depressive disorder, NOS; anxiety disorder, NOS; and specific phobia, situational type.  Dr. Benton opined that when she was not experiencing pain, the claimant appeared to have "adequate capacity in the areas of understanding, memory, concentration, persistence, social interaction, and adaptation" (Exhibit 7F, page 4).

Great weight is given to the opinion of Dr. Benton to the extent it reflects no significant impairment in the claimant's functioning as a result of her mental health impairments.  As to any opined limitations related to pain, the opinion is given less weight, as the claimant's subjective complaints as to her level of pain is not given great weight for the various reasons discussed below herein.

On September 13, 2013, the claimant underwent a physical examination with Dr. Lance Chodosh at the request of this Agency (Exhibit 8F).  There, the claimant reported that she was independent in activities of daily living,[7] though she alleged that she could not stand continuously for more than 40 minutes, bend at the wait [sic], or lift more than 15 pounds.  The claimant reported that she had difficulty opening tight jar lids but otherwise had normal dexterity and general use of hands.  Objectively, the claimant was described as a mildly obese and slightly weathered appearing person of large build.  The claimant was noted to be fully oriented with normal speech pattern, appropriate thought content, and normal affect.  No more than "mild" pain behaviors were noted, and these were said to "slightly" limit the functional assessment (Exhibit 8F, page 2).  The claimant's extremities showed no edema, cyanosis, atrophy, clubbing, deformity, or significant varicosity.  The claimant's back/spine showed no deformity, tenderness, or paraspinal muscular spasm.  Straight leg raise was negative.  Neurologically, the claimant showed grossly normal motor function throughout all four

---

[7]  A claimant's daily activities may be considered in evaluating and discrediting complaints of disabling pain.  Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984).

extremities with strength judged to be 5/5 throughout, including grips. Manual dexterity was normal, coordination was good, and the claimant had no drift of outstretched arms. Sensation to soft touch and pinprick was decreased in both hands, mostly in a pattern suggestive of median nerve impairment, but the deficit also seemed to include the ulnar side of both ring fingers, which was said to be not entirely compatible with median nerve impairment. Carpal tunnel signs were absent and no atrophy was noted in either hand (Exhibit 8F, page 3). Standing balance was normal as was her gait.

In terms of assessments, Dr. Chodosh noted that he did not find clear evidence of impairment related to her reported history of carpal tunnel syndrome and upper extremity pain. Further, he found no clear evidence of impairment based on her history of surgical treatment of the foot. The claimant was assessed only with mild to moderate obesity. Dr. Chodosh opined that based only on the objective evidence, the claimant was able to stand, walk, sit, stoop, squat, kneel, lift, carry, handle objects, hear, see, and speak normally (Exhibit 8F, page 4).

The claimant returned to the ACORN medical clinic in October 2013 and reported that she was generally feeling pretty well, though she claimed worsening joint pain, stiffness, and swelling, particularly in the fingers, wrists, and right foot. The claimant again reported that she was being seen by an orthopedist, but no records have been produced to confirm the claimant's allegations. It was noted by Ms. Topp that the claimant had undergone pulmonary function testing that showed mild COPD; however, the claimant had not been placed on any medications (Exhibits 11F, page 14 and 14F, page 3). A wrist X-ray had shown mild degenerative changes (Exhibit 14F, page 3). Objectively, the claimant complained of tender joints at the DIP and MCP joint s of both hands; however, she was noted to have no deformities and good range of motion. Ms. Topp thereafter requested that the claimant be evaluated by rheumatology (Exhibit 11F, page 15).

The claimant was examined by Dr. Bruce Yancey on November 4, 2013 (Exhibit 11F, page 9). According to Dr. Yancey's resume, he is a rheumatologic specialist who retired from private practice in July 2004 who began consulting for the ACORN Clinic as a

rheumatologist in 2012.   Dr. Yancey was last certified in rheumatology in 2010 (Exhibit 16F).

When the claimant presented to Dr. Yancey, she reported a host of symptoms and difficulties that had not previously been complained of to her providers, including diffuse myofascial symptoms, fatigue, non-restorative sleep, erythema of the hand joints, and chronic weakness all over.  The claimant also alleged that she experienced hypertension with intermittent claudication, and constipation alternating with diarrhea as well as easy bruising and occasional redness of her hand joints (Exhibit 11F, page 9).   Objectively, the claimant was noted to be mildly obese with a body mass index of 31.01.  The claimant demonstrated no extremity edema and no evidence of active or chronic synovitis or synovial thickening.  The claimant was said to have normal muscle strength but diffuse prominent myofascial tenderness in "all expected locations" (Exhibit 11F, page 10).   The claimant was assessed with fibromyalgia and localized primary osteoarthritis of the hand.  The claimant was recommended to begin a gentle exercise program and try to minimize stress (Exhibit 11F, page 10).

The claimant underwent an evaluation at ReQuest Physical Therapy on November 11, 2013.   The claimant was noted to be generally deconditioned and complained of fatigue quickly (Exhibit 12F, page 22).  The claimant attended a total of nine sessions (Exhibit 12F, page 21).  The claimant was discharged from therapy on January 23, 2014 at her own request.  The claimant reported that she was doing much better since beginning therapy (Exhibit 12F, page 1).

Prior to discharging from therapy, however, the claimant presented to Ms. Topp on December 12, 2013 requesting to have paperwork filled out "describing her disabilities" (Exhibit 11F, page 4).  At that time, the claimant alleged that she had experienced joint pain in her shoulders and wrists since the 1990's with pains in her knees since childhood.   The claimant further alleged that she could not open jars, get out pots and pans, or doing any heavy lifting secondary to carpal tunnel syndrome.   The claimant alleged muscle pain and fatigue secondary to fibromyalgia.

Objectively, the claimant exhibited 4+/5 grip bilaterally with 4+/5 finger spread on the right and 5+/5+ on the left.   Arm strength was within normal limits.  The knees, wrists, shoulders, and neck were said to be tender, but she exhibited no edema, joint effusions, erythema, edema, or ecchymosis (Exhibit 11F, page 4).

The same day that the claimant saw Ms. Topp, she completed a claimant provided "Functional Capacity Evaluation" (Exhibit 9F). Ms. Topp opined that the claimant could lift 10 pounds occasionally and five pounds frequently, sit for eight hours, stand for four hours, and never perform gross manipulation, fine manipulation, or reaching.  It was further opined that the claimant would be absent from work more than four days per month.  The stated basis for the restrictions was said to be carpal tunnel syndrome, fibromyalgia pain, tendonitis, and osteoarthritis of the knees, shoulders, and lower back.  No weight has been given to the opinion of Ms. Topp as the medical evidence of record does not satisfy the statutory criteria that the claimant has the listed medical impairments [*see supra* at 19 n.6]. Further, the opinions are not consistent with the benign objective findings both in the treatment records and from the claimant's examination with Dr. Chodosh.

Four days later, the claimant presented to Dr. Yancey for follow-up and reported that she had significant improvement in her myofascial features (Exhibit 11F, page 1).  At the claimant's request, Dr. Yancey completed a "brief functional capacity evaluation" (Exhibit 11F, page 1).

The same style of "Functional Capacity Evaluation" was completed by Dr. Yancey (Exhibit 10F).  Dr. Yancey opined slightly less restrictions, to include occasional manipulations, reaching, and operation of motor vehicles with rare climbing, bending, or work around hazardous machinery.  In addition, he opined that the claimant would be absent from work three days per month with pain severe enough to occasionally interfere with attention and concentration.  The basis for these medical restrictions was fibromyalgia.  No weight has been given to the opinions of Dr. Yancey as the medical evidence of record does not satisfy the statutory criteria for a finding of fibromyalgia as an impairment. Further, the opinions are not consistent with the benign objective

findings both in the treatment records and from the claimant's examination with Dr. Chodosh.

The claimant continued to receive routine follow-up care from Ms. Topp and Dr. Yancey (Exhibits 13F to 15F). The claimant was noted to be engaged in low impact exercising and stretching (Exhibit 15F, page 8). The claimant reported to Dr. Yancey that she was exercising three times a week with her sister at a local health club (Exhibit 15F, page 5). The claimant even reported that she was engaging in yard work in March 2014 (Exhibit 13F, page 1). Objectively, no significant changes in functioning or behavior were noted. The claimant reported in September 2014 that she was very stressed caring for sick relatives and that her husband was recently retired and not helping with chores around the house (Exhibit 15F, page 7).

Tr. 26-30.

Substantial evidence supports the ALJ's determination to give no weight to Dr. Yancey's opinion that Plaintiff has fibromyalgia. Plaintiff presented to Dr. Yancey for the first time on November 4, 2013, reporting a long history of pain. Tr. 401. On examination, Plaintiff had "[d]iffuse prominent myofascial tenderness in all expected locations." Tr. 402. Dr. Yancey diagnosed Plaintiff with fibromyalgia. Otherwise, the musculoskeletal exam was relatively normal. The objective neurologic results were also generally normal. Tr. 402. Dr. Yancey noted under

musculoskeletal (review of systems): "Muscle pain: Most every MSK ROS was checked in the positive.  Notes RAPID3 today was 20.7."[8] Tr. 401.  Plaintiff returned to Dr. Yancey on December 16, 2013, with "significantly improvement in the tenderness of her myofascial tender areas with minimal pain or tightness today."[9]  Tr. 438, 452.  Dr. Yancey noted: "Her RAPID3 is significantly improved from 20 to 11 today." Tr. 393.

As of March 17, 2014, Plaintiff was "still feeling better having pursued PT and she continues her daily exercises.  Even though stress is higher with some family responsibilities which have arisen, she is coping remarkably well.  RAPID3 today was 10.3 total."  Tr. 438.  As of November 17, 2014, Plaintiff "still had diffuse myofascial findings but no evidence for chronic or active synovitis, and no LE edema."  Tr. 451. She "has made significant improvements to her regimen in an attempt to change the dynamics of this disorder [referring to fibromyalgia] – she is exercising three times weekly, and trying to diminish stress, and is

---

[8] "RAPID3" refers to "Rapid Assessment of Patient Index Data" and is part of the "Multidimensional Health Assessment Questionnaire (MHAQ)."  *See* www.rheumatology.org/Practice-Quality/Clinical-Support/Quality-Measurement/Disease-Activity-Functional-Status-Assessments.  The record does not include this form(s) or an explanation of its utilization in this matter.

[9] At Plaintiff's request, Dr. Yancey filed out "a brief functional capacity evaluation "on the same day.  Tr. 393 (Exhibit 10F).

already on a host of medications which should assist with this." Tr. 452.

"She was congratulated on her fine exercise program and her stress-reduction techniques."[10] *Id.*

To find that a claimant has fibromyalgia, the Commissioner requires that various criteria be satisfied, including treatment notes that establish a history of widespread pain lasting at least three months. SSR 12-2p, 2012 SSR LEXIS 1, at *2. Although Dr. Yancey documented tenderness "in all expected locations," Tr. 402, Plaintiff has not cited findings confirming that Plaintiff had at least 11 tender points found bilaterally and above and below the waist, detected using digital palpation with approximately nine pounds of force. SSR 12-2p, 2012 SSR LEXIS 1, at *5-6. When tender points are not described, fibromyalgia can still be established if the documentation establishes repeated "manifestations" of six or more fibromyalgia symptoms. *Id.* at *7. Dr. Yancey documented some complaints of pain, fatigue, non-

---

[10] On March 16, 2015, following her last visit in November 2014, Plaintiff reported to Dr. Yancey, that she was beginning "a consistent gentle exercise program at Planet Fitness in Gainesville which has allowed for some improvement in her myofascial features." Tr. 473. Under musculoskeletal (objective) it is noted: "Cervical Spine: normal and range of motion, with strength preserved in the UEs and LEs. SLR sitting was normal bilaterally. DTRs were 1+ and symmetric in the UEs and LEs. She was wearing a RCT splint today," attempting to avoid overuse phenomena of her hands. Tr. 473-74. It was also noted that Plaintiff was still trying to obtain SS disability and that another form was filled out for her. The scheduled May 20, 2015, hearing date before the ALJ was noted. Tr. 474.

restorative sleep, depression and anxiety, and weakness.  *See, e.g.*, Tr. 393, 401, 438, 473.  Plaintiff, however, has not cited to evidence establishing at least six or more fibromyalgia symptoms occurring in repeated manifestations.  *Id.* at *8.

Moreover, in November 2013, Dr. Yancey noted that despite her tenderness and complaints of pain, Plaintiff had normal strength and reflexes.  Tr. 402.  In December 2013, Dr. Yancey noted Plaintiff had minimal pain or tightness and was doing "gentle exercise."  Tr. 393. Similar findings were made in March 2014; Plaintiff's pain was significantly improved.  Tr. 438.  By November 2014, Plaintiff reported that she was exercising three times weekly and Dr. Yancey observed Plaintiff had made significant improvements.  Tr. 452.  These mild findings are inconsistent with Dr. Yancey's restrictive limitations in lifting, standing/walking, and attendance.  Tr. 392.  Substantial evidence supports the ALJ's determination regarding Dr. Yancey's opinion. Phillips v. Barnhart, 357 F.3d at 1241.

As noted above, the ALJ also found Nurse Topp's medical statement unsupported by the evidence.  Tr. 29.  Nurse-practitioners, like Nurse Topp, are considered *other* medical sources.  20 C.F.R.

§ 404.1513(d)(1).  "Accordingly, an ARNP's opinion is not entitled to the same weight as afforded the opinion of a treating psychiatrist or psychologist.  *Cf.* Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998)." Osterhoudt v. Astrue, No. 8:10-CV-336-T-TGW, 2011 U.S. Dist. LEXIS 5781, at *7 (M.D. Fla. Jan. 14, 2011).

Notwithstanding, in addition to evidence from listed acceptable medical sources, the Commissioner "may also use evidence from other sources [such as a nurse practitioner] to show the *severity* of [a claimant's] impairment(s) and how it affects [their] ability to work."  20 C.F.R. § 404.1513(d) (emphasis added).  Further, the opinion is afforded weight to the extent that it is supported by the factors listed in 20 C.F.R. § 404.1527(d), including the treatment provided, the extent of the examinations and testing performed, the consistency with the other evidence, and the degree of explanation provided with the opinion.  *See* SSR 06-3p, 2006 SSR LEXIS 5, at *5-7 (2006).

Given her professional nursing status, Nurse Topp could not establish the existence of fibromyalgia or any other medically determinable impairment.  20 C.F.R. § 404.1513(a); SSR 12-2p, 2012 SSR LEXIS 1, at *3-4 ("Generally, a person can establish that he or she has an MDI of FM by providing evidence from an acceptable medical

source. . . . A licensed physicians (medical or osteopathic doctors) is the only acceptable medical source who can provide such evidence." (footnote omitted)). Substantial evidence does not support Dr. Yancey's findings that Plaintiff has fibromyalgia and, as a result, Nurse Topp's reliance on this impairment rendered her statement unreliable. Tr. 391; *see* Tr. 397, 453.

The ALJ noted that Plaintiff received primary care treatment from ACORN Medical Clinic dating back to 2011 and that Nurse Topp primarily treated Plaintiff on and after September 25, 2012, when Plaintiff complained of feeling stressed and elbow pain. Tr. 26, 356. Under musculoskeletal (objective), the following is noted: "Musculoskeletal system: normal and There [sic] is tenderness to palpation over the lateral epicondyle. No edema, no erythema. good rom." Tr. 356. Fibromyalgia was not diagnosed by Nurse Topp. Tr. 357; *see* Tr. 343, 349, 351, 353, 355, 357 (same). It was not until December 12, 2013, when Plaintiff reported to Nurse Topp that she was diagnosed with fibromyalgia, presumably after Dr. Yancey's diagnosis on November 4, 2013, Tr. 401-02. Tr. 397.[11]

---

[11] Nurse Topp's notes for December 12, 2013, under musculoskeletal (objective) state: "Musculoskeletal system: Grip strength is 4+/5+ bilaterally. Finger spread 4+/5+ on the right, 5+/5+ on the left. Arm strength with abduction adduction, elbow flexion and

Nurse Topp's statement regarding Plaintiff having fibromyalgia is also not supported by her examination patient notes.  Tr. 29; *see, e.g.,* Tr. 348, 350-51, 356, 396, 407.  Rather, Nurse Topp's findings do not support her restrictive medical statement and substantial evidence supports the ALJ's decision to give her statement no weight.  Tr. 29.

The ALJ also noted that Dr. Yancey's opinion and Nurse Topp's medical statement were inconsistent with other evidence.  Tr. 29-30. They are inconsistent with their generally mild examination findings and they are also inconsistent and contrary to the findings of examining physician Lance Chodosh, M.D.  Tr. 29-30; *see, e.g.*, Tr. 384-88 (Sept. 13, 2013).  Plaintiff's argument that they are consistent with each other, ECF No. 20 at 27, is also unavailing for the reasons explained above.

The problem here is especially acute because during the hearing, the ALJ specifically discussed the lack of evidence regarding the fibromyalgia diagnosis with Plaintiff's counsel, suggested that counsel seek additional evidence and explanation from Dr. Yancey referring to SSR 12-2p, and gave Plaintiff's counsel an additional 30 days to obtain

---

shoulder rotation wnl.  The knees, wrists, shoulders, neck are tender bilaterally.  No edema, joint effusions, erythema, edema or ecchymosis."  Tr. 396.

additional evidence.  Tr. 71-72.  No such potential explanatory evidence was forthcoming.

Further, Plaintiff states that the ALJ should have found her testimony, and supporting statements from her husband, credible. ECF No. 20 at 28-29.  Plaintiff argues that "there is no objective test for fibromyalgia."  ECF No. 20 at 26.  Yet, Plaintiff may not rely solely on her own statements to prove the existence of an impairment.  *See generally* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1508.  Although a lack of objective evidence can be a "hallmark" of fibromyalgia, Moore, 405 F.3d at 1211 (citation omitted), the Commissioner requires sufficient objective evidence of the condition.  SSR 12-2p, SSR 12-2p, 2012 SSR LEXIS 1 at *2-3.  Plaintiff did not provide sufficient evidence establishing she had that condition and substantial evidence supports the ALJ's decision to discount Dr. Yancey's opinion and Nurse Topp's statement on that basis.

The ALJ made several credibility findings:

On May 20, 2015, the claimant and her representative were present for a hearing on this matter, and the undersigned has considered all testimony rendered.  The claimant testified that she had the osteoarthritis in her back and knees, swelling of the hands daily, right arm pain daily, a pinched nerve in her shoulder, and depression.  The claimant testified in part that she had tingling in her finger tips and was unable to make a fist with her right hand.  The claimant alleged that sciatica in her lower back limited her ability to stand, and she claimed to have "bone on bone" in both knees.  The claimant alleged that she has shortness of breath after walking her dogs for 15

minutes. Further, in contrast to her reports to her doctor, the claimant testified that her husband helped with cooking, shipping [sic], and other chores.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

A claimant's allegations are less credible when the record contains weak or inconsistent objective medical findings. The stronger the correlation between the objective findings and the subjective complaints, the more probative the subjective complaints become. Here, the claimant's subjective complaints are out of proportion with the weak and inconsistent objective medical findings contained in the record. The medical records do not support consistent multi-joint inflammation, indicated by joint swelling stiffness, redness and/or warmth. The claimant has not exhibited any significant loss of range of motion, if any loss was exhibited, at any time since the alleged onset date. There is no evidence of reduced grip strength in the hands, loss of color in the allegedly affected regions, muscle spasm with examination, or muscle atrophy. The medical records also do not contain notes that the claimant exhibited difficulty-initiating movement, difficulty moving generally, or muscle tremors.

Further, the claimant's treatment for her allegedly disabling conditions has consisted of conservative non-invasive care, primarily medications. The claimant engaged in a short period of physical therapy, which she reported had given her improvement in her symptoms. The claimant has no nerve conduction testing, no hospitalizations, or emergency care presentation s for hard to control symptoms.

Moreover, the claimant has provided numerous inconsistent statements regarding her activities of daily living, and cognitive abilities, which undermines her overall credibility. Specifically, at the psychological examination, the claimant alleged a history of special education as well as an inability manage finances, which

contradicts her initial applications and Function Report (Exhibits 2E, page 3 and 6E). Additionally, school records do not confirm and was not argued at the hearing that she had any cognitive impairment (Exhibit 7F, page 3 and 15E).

Finally, the circumstances surrounding the filing for benefits can be probative evidence of credibility or any lack thereof. Here, the claimant has alleged that she stopped working due to her condition, but there exists good reason to doubt the claimant's contentions. Specifically, there are no medical records substantiating any particular reason for the alleged onset date and the medical evidence certainly does not support any significant impairment arising around that time. Such a lack of evidence raises questions as to whether the claimant's initial and continuing unemployment is actually due to medical impairments or some other circumstance.

Tr. 30-31.

The ALJ found that Plaintiff's symptoms were not as limiting as she alleged, noting that objective evidence did not support her allegations. Tr. 18-19, 30-31. For example, Dr. Yancey and Nurse Topp generally found normal musculoskeletal findings, no muscle spasm, and intact range of motion, which is inconsistent with Plaintiff's allegation that her pain limited her ability to lift, carry, or sit to disabling proportions.

The ALJ noted that Plaintiff had relatively minimal treatment for her impairments. Tr. 30. Dr. Yancey and Nurse Topp noted that Plaintiff's treatment was generally limited to exercise and stretching. *See, e.g.*, Tr. 393, 454. Plaintiff attended physical therapy (nine sessions) for approximately two months beginning on November 11, 2013, but was

discharged on January 23, 2014, after reporting that she was "doing much better since beginning therapy and that she is able to walk around and move more freely." Tr. 412. Plaintiff's lack of more aggressive or extensive treatment indicates her symptoms were not as limiting as she alleged. *See* Falcon v. Heckler, 732 F.2d 827, 832 (11th Cir. 1984).

The ALJ also noted that Plaintiff made inconsistent statements to examining sources about her various symptoms. Tr. 31. Although Plaintiff reported pain and weakness at the hearing, she denied, on occasion, arthralgias, paresthesias, or myalgias at various visits with Nurse Topp. *See, e.g.*, Tr. 348, 350, 352; *but see* Tr. 342.

The ALJ's decision is supported by substantial evidence and he correctly applied the law. *See generally* Land v. Astrue, Case No. 5:09cv369/SPM/MD, 2011 U.S. Dist. LEXIS 21694, at *22-24 (N.D. Fla. Jan. 6, 2011) (affirming Commissioner's denial of disability benefits despite treating rheumatologist's impression of fibromyalgia), *adopted*, 2011 U.S. Dist. LEXIS 21773 (N.D. Fla. Mar. 3, 2011). As the ALJ determined, Plaintiff is capable of performing past relevant work as a hair stylist because such work does not require activities precluded by her RFC. Tr. 32.

## V.  Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law.  Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED** and judgment entered for the Commissioner.

**IN CHAMBERS** at Tallahassee, Florida, on April 28, 2017.

s/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**